IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

PAIGE MORRISON and
STEPHEN MORRISON[1],

     Plaintiffs,

v.

OCWEN LOAN SERVICING, LLC,
NATIONSTAR MORTGAGE, LLC,
and CALIBER HOME LOANS, INC.,

     Defendants.

CIVIL ACTION FILE NO.
1:18-CV-01707-JPB-LTW

## MAGISTRATE'S ORDER AND FINAL REPORT AND RECOMMENDATION

Pending before the Court is a Motion to Dismiss Plaintiffs' Amended Complaint

[Doc. 19] brought pursuant to Federal Rule of Civil Procedure 12(b)(6) by Defendants

Ocwen Loan Servicing, LLC ("Ocwen"), Nationstar Mortgage, LLC ("Nationstar"),

and Caliber Home Loans, Inc. ("Caliber").  [Doc. 20].  Also pending before the Court

---

[1] During a telephone conference on December 23, 2019, the Court gave Plaintiffs until January 21, 2020, to secure local counsel in this case.  [Doc. 28].  Plaintiffs also agreed that this Court could issue a ruling on the Defendants' Motion to Dismiss [Doc. 20] on January 21, 2020.  [Doc. 28].  As of the filing of this Report and Recommendation, Plaintiffs have not informed the Court that they have secured counsel; therefore, they are deemed to be proceeding pro se.

is a Motion for Leave to File a Second Amended Complaint filed by Plaintiffs Paige Morrison and Stephen Morrison.  [Doc. 23].   For the reasons discussed below, the Court **RECOMMENDS** that Defendants' Motion to Dismiss be **GRANTED** [Doc. 20].  Accordingly, Plaintiffs' Motion to Amend is **DENIED**.  [Doc. 23]

I.   **FACTUAL BACKGROUND**

Plaintiffs Paige Morrison and Stephen Morrison filed the instant case on March 19, 2018, in the Superior Court of Gwinnett County.  [Doc. 1-1, at 4].  Defendants removed the case to this Court on April 20, 2018. [Doc. 1].  The Amended Complaint, which is the operative pleading in this case, asserts that this case involves a home that Plaintiffs purchased in Savannah, Georgia ("the property") on April 7, 2006.  [Doc. 19 ¶¶ 12, 13].  Plaintiffs executed a note payable to Taylor, Bean, & Whitaker ("TBW") and a security deed in favor of Mortgage Electronic Registration Systems, Inc. ("MERS"), solely as nominee for TBW and their successors and assigns in interests. [Id.].  According to Plaintiffs, "[t]he loan was for principal and interest only without any escrow amounts for property taxes or hazard insurance." [Doc. 19 ¶ 14].  A written contract between Plaintiffs and TBW required Plaintiffs to mail mortgage payments to TBW.  [Doc. 19 ¶ 16].  Although unclear, it appears that Plaintiffs allege that TBW returned Plaintiffs' July and August 2009 mortgage payments to them.  [Doc. 19 ¶¶ 18, 19].

2

Plaintiffs assert that Cenlar began servicing their mortgage loan in August 2009. [Doc. 19 ¶ 20]. Cenlar then demanded "triple what was due on the loan" because Cenlar added an escrow account to the mortgage and was charging Plaintiffs for taxes and hazard insurance in the form of force-placed insurance. [Doc. 19 ¶ 21]. Cenlar assessed a $3,217.47 charge for force-placed insurance. [Doc. 19 ¶ 22]. Plaintiffs advised Cenlar as to the discrepancies in charges and additions. [Doc. 19 ¶ 24]. Plaintiffs sent a letter to Cenlar on or about September 1, 2009, complaining about the inability to reach the company. [Doc. 19 ¶ 25]. Plaintiffs also tendered to Cenlar the mortgage payments for July 2009, August 2009, and September 2009, and Plaintiffs were credited for those payments. [Doc. 19 ¶ 26]. Plaintiffs then submitted a full mortgage payment for November 2009, but Cenlar returned it. [Doc. 19 ¶ 27]. Cenlar informed Plaintiffs to "hold off" on making further payments due to Plaintiffs' dispute "until the account could be updated." [Doc. 19 ¶ 28]. In December 2009, Cenlar sent Plaintiffs a statement indicating that they owed $3,148.85 towards an escrow account balance. [Doc. 19 ¶ 29]. Cenlar also informed Plaintiffs that their mortgage loan was being transferred to a new servicer. [Doc. 19 ¶ 30].

Plaintiffs received an account statement from Defendant Ocwen dated December 18, 2009, stating that they owed $3,152.85 to escrow, that they were past due in the amount of $5,008.11, and that their next payment was due in the amount of $6,711.79.

[Doc. 19 ¶ 31].  The December 18, 2009 account statement also indicated that the October 2009 mortgage payment was still unpaid.  [Doc. 19 ¶ 32].  Plaintiffs made the October 2009 mortgage payment to Ocwen.  [Doc. 19 ¶ 33].  In a letter dated December 21, 2009, Ocwen informed Plaintiffs that it was now the servicer of their mortgage effective December 17, 2009.  [Doc. 19 ¶ 34].  Plaintiffs continued to dispute with Ocwen the erroneous escrow account and the improper application of force-placed insurance.  [Doc. 19 ¶ 35].   In a letter dated February 10, 2010, Ocwen admitted that Plaintiffs' tax payments should not be escrowed and informed Plaintiffs that "[p]er the terms of the original loan agreement, you are obligated to pay all property taxes as they become due."  [Doc. 19 ¶ 36, Exhibit ("Ex.") 1].  Ocwen, however, continued to bill Plaintiffs for both force-placed insurance and taxes.  [Doc. 19 ¶ 37].  In February or March 2010, Ocwen informed Plaintiffs that the only way they could rectify their situation was to apply for a mortgage modification, for which Plaintiffs applied.  [Doc. 19 ¶ 38].

In March 2010, Plaintiffs received a letter from Defendant Ocwen's attorneys indicating that they were in default on the loan.[2]  [Doc. 19 ¶ 39].  On March 15, 2010, in response to a written request from Plaintiffs, Ocwen wrote, in part, the following:

---

[2] Plaintiffs state that they received a letter from "Defendant's attorneys" but do not specify the Defendant; however, this section of Plaintiffs' Amended Complaint makes allegations against Defendant Ocwen.  [Doc. 19 ¶ 39].

> We acquired the servicing rights of your loan on December 17, 2009, from the prior servicer, Central Loan Administration and Reporting (CENLAR) with a negative escrow balance in the amount of $3,152.85 along with an escrow payment of $983.11. Our records indicate that the servicer prior to CENLAR had assessed two (2) lender placed hazard insurance(s) for the period effective January 22, 2008 through January 22, 2009 and January 22, 2009 through January 22, 2010 totaling to $3,217.47, which resulted in a negative escrow balance on your loan. The negative escrow balance in the amount of $3,152.85 was transferred to CENLAR. which was transferred to us as outstanding. Further, on February 3, 2010, we credited funds in the amount of $1,480.91 towards the lender placed hazard insurance(s) assessed to your loan. In order for Ocwen to credit the balance funds in the amount of $1,736.56 ($3,217.47 - $1,480.91), we request you to provide us with the Declaration Page of insurance for the period effective January 2, 2008 through January 31, 2009.

[Doc. 19 ¶ 44, Ex. 3]. On March 24, 2010, Plaintiffs faxed a declaration from the owner of their homeowner's hazard insurance agency that Plaintiffs had been paying since inception of the loan with attachments for five years of insurance premiums paid by them. [Doc. 19 ¶ 45]. Plaintiffs also provided Ocwen with the requested proof of the Declaration Page of insurance and was thereafter relieved of the force-placed insurance premiums on the escrow account. [Doc. 19 ¶ 46]. However, "Ocwen continued to hold its position that the mortgage should still be escrowed for property taxes, despites its earlier admission." [Doc. 19 ¶ 47].

In April 2010, while the modification and disputes were pending, Plaintiffs received a foreclosure notice. [Doc. 19 ¶¶ 40, 41]. Ocwen published its first foreclosure notice in the Chatham County legal organ for four weeks during the weeks

of April 4, April 11, April 18, and April 25, 2010. [Doc. 19 ¶ 91]. Ocwen published its second foreclosure notice in the Chatham County legal organ for four weeks during the weeks of June 6, June 13, June 20, and June 27, 2010. [Doc. 19 ¶ 92]. Ocwen declined Plaintiffs' modification request on July 11, 2010. [Doc. 19 ¶¶ 42, 43, Ex. 2]. Ocwen published its third foreclosure notice in the Chatham County legal organ for four weeks during the weeks of July 4, July 11, July 18, and July 25, 2010. [Doc. 19 ¶ 93].

In a letter from Ocwen to Plaintiffs dated March 9, 2012, in response to a written request from Plaintiffs, Ocwen stated, in part:

> Our records indicate that the loan is escrowed with us only for taxes. Please be advised that even if the loan is not escrowed for taxes and/or insurance, if the taxes payable towards the property are delinquent or if we do not receive proof of insurance on the property for any given period, in order to protect our interest, we disburse the delinquent taxes and/or assess Lender Placed Insurance (LPI) on the property. This will result in a negative escrow balance and an escrow payment will be added to the monthly payment amount in order to collect the escrow advance.

[Doc. 19 ¶ 47, Ex. 4]. The March 9, 2012 letter from Ocwen also stated, in part:

> We do not accept payments when the loan is in active foreclosure, unless the loan is established on forbearance plan or if the funds are sufficient to completely reinstate the loan to current status. Further, during active foreclosure we accept only certified payments. Please note that we do not accept payments when the loan is in active foreclosure, unless the funds are sufficient to completely reinstate the loan to current status.

[Doc. 19 ¶ 51, Ex. 4].

6

Ocwen published its fourth foreclosure notice in the Chatham County legal organ for four weeks during the weeks of June 3, June 10, June 17, and June 24, 2012. [Doc. 19 ¶ 94]. Ocwen did not go through with any of the scheduled foreclosure sales. [Doc. 19 ¶ 56]. Plaintiffs allege that the publication of foreclosure notices damaged their reputation, credit scores, and their business. [Doc. 19 ¶ 59]. Plaintiffs also contend that Ocwen reported inaccurate information to the credit reporting agencies, damaging their credit. [Doc. 19 ¶ 63]. Plaintiffs assert that their business lost income and they were unable to purchase another shrimping boat or buy other property. [Doc. 19 ¶ 60]. Plaintiffs further allege that Ocwen's failure to resolve the dispute caused them to separate and consider ending their marriage. [Doc. 19 ¶ 68].

Around May 30, 2013, Ocwen assigned the security deed associated with the mortgage loan to Defendant Nationstar, who continued to make the same erroneous demands for payment and did not attempt to correct the errors despite Plaintiffs' complaints. [Doc. 19 ¶ 69]. On Nationstar's mortgage statement dated May 18, 2016, Nationstar claimed that Plaintiffs owed $10,792.11 in legal fees and $687.00 for property inspections. [Doc. 19 ¶ 70]. Around June 28, 2016, Nationstar assigned the security deed to U.S. Bank Trust, N.A. as trustee for LSF9 Master Participation Trust. [Doc. 19 ¶ 71]. At that time, Defendant Caliber began servicing the mortgage loan. [Doc. 19 ¶ 72]. Plaintiffs state that Caliber made the same erroneous demands for

payments and did not attempt to correct the errors despite Plaintiffs' complaints.  [Id.].

Caliber published its foreclosure notice in the Chatham County legal organ for four

weeks in April 2018.  [Doc. 19 ¶ 95].  The foreclosure notices published by both Ocwen

and Caliber state, "Because of a default in the payment of the indebtedness secured by

that certain Security Deed, dated April 7, 2006, executed by STEPHEN MORRISON

and PAIGE MORRISON . . ."  [Doc. 19 ¶ 85].

Arising from these facts, Plaintiffs bring the following claims: wrongful

attempted foreclosure against Defendants Ocwen and Caliber (Count I); breach of

contract against all Defendants (Count II); negligence against all Defendants (Count

III); violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692,

against Defendant Caliber (Count IV); and attorney's fees and costs (Count V).  [Doc.

19 ¶¶ 73-145].

## II.    **LEGAL STANDARD**

Defendants argue Plaintiffs' Amended Complaint should be dismissed pursuant

to Rule 12(b)(6) because it fails to state a claim upon which relief can be granted.  [Doc.

20].  Dismissal is warranted under Rule 12(b)(6) if, assuming the truth of the factual

allegations in Plaintiffs' Amended Complaint, there is a dispositive legal issue which

precludes relief or if the claim is based on an indisputably meritless legal theory.

Neitzke v. Williams, 490 U.S. 319, 326 (1989); Brown v. Crawford County, Ga., 960

F.2d 1002, 1009-10 (11th Cir. 1992).  A Rule 12(b)(6) motion to dismiss also tests the sufficiency of the complaint against the legal standard set forth in Rule 8: "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  A complaint "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007).  To state a claim with sufficient specificity requires that the complaint have enough factual matter, which when taken as true, suggests the required elements of the claim.  Watts v. Fla. Int'l Univ., 495 F.3d 1289, 1296 (11th Cir. 2007); Hill v. White, 321 F.3d 1334, 1335 (11th Cir. 2003).  Factual allegations in a complaint need not be detailed but "must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)."  Twombly, 550 U.S. at 555 (citing Swierkiewicz v. Sorema N.A., 534 U.S. 506, 508 n.1 (2002)).

## III.   DISCUSSION

### A.   Wrongful Attempted Foreclosure Claim

In Count I of their Amended Complaint, Plaintiffs assert a state law claim against Defendants Ocwen and Caliber for wrongful attempted foreclosure.  [Doc. 19 ¶¶ 73-98].  "[W]hen a foreclosure action was commenced but not completed[,]" a plaintiff may bring a claim under Georgia law for wrongful attempted foreclosure.  McGowan

v. Homeward Residential, Inc., 500 F. App'x 882, 885 (11th Cir. 2012) (citing Aetna Fin. Co. v. Culpepper, 171 Ga. App. 315, 319 (1984)).  Plaintiffs asserting such a claim must plausibly allege that "the defendant knowingly published an untrue and derogatory statement concerning their financial conditions and the plaintiffs sustained damages as a direct result of that statement."  Id.

As noted *supra*, Plaintiffs assert in their Amended Complaint that Defendant Ocwen published foreclosure notices in the Chatham County legal organ in April 2010, June 2010, July 2010, and June 2012.  [Doc. 19 ¶¶ 91-94].  Plaintiffs assert that Defendant Caliber published its foreclosure notice in the Chatham County legal organ in April 2018.  [Doc. 19 ¶ 95].  The foreclosure notices published by both Ocwen and Caliber allegedly state, "Because of a default in the payment of the indebtedness secured by that certain Security Deed, dated April 7, 2006, executed by STEPHEN MORRISON and PAIGE MORRISON . . ."  [Doc. 19 ¶ 85].

Defendants argue Plaintiffs' wrongful attempted foreclosure claim must be dismissed because Plaintiffs do not allege that they are current on their payments and no publication related to the scheduled foreclosure contained false information with regard to Plaintiffs' financial condition.  [Doc. 20, at 7-8].  Defendants contend that at the time the publications were made, Plaintiffs had admittedly not made their mortgage

payments or otherwise paid the arrearage they owed.  [Id.].  The undersigned agrees with Defendants.

This Court has consistently held that a claim for wrongful attempted foreclosure will be dismissed if plaintiffs "defaulted on their loan obligations and, pursuant to the written terms of the Security Deed, the Property securing that loan is subject to a foreclosure sale." Fenello v. Bank of Am., N.A., 926 F. Supp. 2d 1342, 1353 (N.D. Ga. 2013) (citing Ezuruike v. Bank of New York Mellon, No. 1:11-CV-4030-JEC, 2012 WL 3989961, at *1-2 (N.D. Ga. Sept. 11, 2012) (dismissing attempted wrongful foreclosure claim where "plaintiff makes no plausible allegation that he was not in default and therefore a foreclosure notice suggesting that he was could not falsely impugn the plaintiff's financial condition"); Peterson v. Merscorp Holdings, Inc., No. 1:12-CV-0014-JEC, 2012 WL 3961211, at *5 (N.D. Ga. Sept. 10, 2012) (plaintiffs failed to state a claim for attempted wrongful foreclosure where they alleged only that defendant misrepresented itself as the secured creditor on foreclosure notice); Sellers v. Bank of Am., Nat'l Ass'n, No. 1:11-CV-3955-RWS, 2012 WL 1853005, at *3 (N.D. Ga. May 21, 2012) (dismissing attempted wrongful foreclosure claim; while plaintiffs alleged that the defendants lacked authority to foreclose, plaintiffs failed to allege sufficient facts to show with plausibility that they suffered any damage as a result)).  In the present case, Plaintiffs do not allege that they were current on their mortgage

payments when the foreclosure notices were issued.  The Amended Complaint alleges Plaintiffs last made a mortgage payment when "Plaintiffs paid the October 2009 mortgage payment to Ocwen."  [Doc. 19 ¶ 33].  Plaintiffs do not specify when this occurred, but it appears that it happened around late December 2009 or early January 2010 because an account statement from Ocwen dated December 18, 2009, informed Plaintiffs that their October 2009 mortgage payment was still unpaid.  [Doc. 19 ¶¶ 31, 32].  There is no allegation in the Amended Complaint that during the following period of more than eight years, Plaintiffs ever tendered a mortgage payment to any Defendants after they paid their October 2009 mortgage payment.

Plaintiffs argue they are excused from making the mortgage payments.  [Doc. 22, at 3-7].  In support of this argument, Plaintiffs cite to O.C.G.A. § 13-4-23, which provides, "If the nonperformance of a party to a contract is caused by the conduct of the opposite party, such conduct shall excuse the other party from performance."  Plaintiffs contend that their failure to make the mortgage payments has been caused by the conduct of Defendants.  [Doc. 22, at 5-7].  According to Plaintiffs, the amount that they allegedly owe is in dispute.  As discussed *supra*, Plaintiffs' Amended Complaint asserts that in August 2009, Cenlar erroneously added an escrow account to the mortgage and charged Plaintiffs for taxes and hazard insurance in the form of a force-placed insurance which Plaintiffs were not required to pay.  [Doc. 19 ¶¶ 20-22].

Plaintiffs also allege that after the loan was transferred to Defendant Ocwen, Ocwen continued to erroneously bill them for force-placed insurance and taxes. [Doc. 19 ¶¶ 34-37]. Plaintiffs write, "What amount is 'admittedly owed'? TB&W, CENLAR, Ocwen, Nationstar, and now Caliber cannot get it right." [Doc. 22, at 6]. Because the amount that Plaintiffs owe is in dispute, they argue that they have been relieved from their obligation to make any mortgage payments since late 2009 or early 2010. [Id. at 5-7]. Plaintiffs' argument is not well-taken.

"Under Georgia law, a borrower may not withhold mortgage payments, even when there is a good faith dispute as to the amount owed." Rourk v. Bank of Am. Nat. Ass'n, 587 F. App'x 597, 598 (11th Cir. 2014) (citing Mitchell v. Interbay Funding, LLC, 279 Ga. App. 323, 325 (2006)). Although Plaintiffs dispute Defendants' charges for force-placed insurance and taxes, they were still "obligated to pay the monthly sum they admittedly owed under the promissory note." Mitchell, 279 Ga. App. at 325. Plaintiffs make no allegation that they made the monthly mortgage payments to Defendants Ocwen and Caliber for the amount they admittedly owed under the terms of the loan agreement.

Plaintiffs make a brief argument that they were relieved of their obligation to make the mortgage payments because of "the steadfast refusal of Defendants to . . . accept the correct mortgage payments." [Doc. 22, at 7]. Plaintiffs are correct that

Georgia caselaw holds, "[A] tender is unnecessary where the person to whom the money is due states that the tender would be refused if made[.]"  Grebel v. Prince, 232 Ga. App. 361, 366 (1998) (citations and internal quotation marks omitted).  Plaintiffs, however, do not cite to any allegation in the Amended Complaint which supports their assertion that Defendant Ocwen or Defendant Caliber refused to accept mortgage payments.  [Doc. 22, at 7].  Although unclear, it appears that Plaintiffs allege that TBW returned their July and August 2009 mortgage payments to them.  [Doc. 19 ¶¶ 18, 19].  Plaintiffs also allege Cenlar returned the mortgage payment they made in November 2009 and that Cenlar informed Plaintiffs (apparently around this time) to "hold off" on any further payments until the account could be updated.  [Doc. 19 ¶¶ 27, 28].  In another portion of the Amended Complaint, Plaintiffs allege that they "attempted at least twice to pay their mortgage payments, and each time the checks were returned." [Doc. 19 ¶ 49].  This allegation is consistent with the prior assertions that Plaintiffs made mortgage payments to TBW and Cenlar which were returned.  [Doc. 19 ¶¶ 18, 19, 27, 28].  However, TBW and Cenlar are not Defendants in this action and Plaintiffs' wrongful attempted foreclosure claim is asserted only against Defendants Ocwen and Caliber.  [Doc. 19, Count I].  Plaintiffs do not allege that Ocwen or Caliber ever refused to accept a mortgage payment or ever informed Plaintiffs that they were not required to make the mortgage payments.  The Amended Complaint asserts that the last

mortgage payment made by Plaintiffs was in late 2009 or early 2010. [Doc. 19 ¶¶ 26-36]. Plaintiffs do not allege that they tendered any mortgage payments to Defendants from early 2010 through 2018. These allegations do not support Plaintiffs' current argument that Defendants refused to accept their mortgage payments. [Doc. 22, at 7].

In their Amended Complaint, Plaintiffs cite to a response from Ocwen indicating that the company "does not accept payments when the loan is in active foreclosure, unless the funds are sufficient to completely reinstate the loan to the current status." [Doc. 19 ¶ 51]. Plaintiffs then assert, "Thus, any further attempts to pay the mortgage payments by Plaintiffs would have been an exercise in futility." [Doc. 19 ¶ 52]. The deficiency in Plaintiffs' argument is that the statement made by Ocwen and cited by Plaintiffs was made in March 2012, more than two years after Plaintiffs had tendered any mortgage payments. [Doc. 19 ¶ 51]. Plaintiffs have not cited to any caselaw holding that debtors are free to withhold mortgage payments for years and then claim futility when they are informed that payments will only be accepted if they are sufficient to reinstate the loan to the current status.

In sum, the Amended Complaint indicates that Plaintiffs failed to make any mortgage payments for many months, and then years, when Defendant Ocwen published foreclosure notices in 2010 and 2012 and when Defendant Caliber published its foreclosure notice in April 2018. As previously noted, while Plaintiffs dispute

certain charges, they were still required to pay the monthly mortgage payments that they admittedly owed.  Mitchell, 279 Ga. App. at 325.  The allegations in the Amended Complaint do not show that Defendants made a "knowing and intentional publication of untrue and derogatory information" concerning the financial condition of Plaintiffs. Jenkins v. McCalla Raymer, LLC, 492 F. App'x 968, 972 (11th Cir. 2012) (citation and internal quotation marks omitted).   Therefore, it is **RECOMMENDED** that Defendants' motion to dismiss be **GRANTED** on Plaintiffs' claim for wrongful attempted foreclosure [Doc. 19, Count I] against Defendants Ocwen and Caliber.  [Doc. 20]

## B.  Breach of Contract Claim

In Count II of their Amended Complaint, Plaintiffs assert a state law claim against all Defendants for breach of contract.  [Doc. 19 ¶¶ 99-117].  In order to establish a breach of contract claim under Georgia law, Plaintiffs must prove: (1) a breach of the contract, and (2) resultant damages (3) to the party who has the right to complain about the contract being broken.  Dewrell Sacks, LLP v. Chicago Title Ins. Co., 324 Ga. App. 219, 223 (2013).  Moreover, "[A] plaintiff may only recover damages for breach of contract by demonstrating: (1) plaintiff's performance of the contract, (2) defendant's breach of the contract, and (3) that the breach caused the plaintiff harm."  Elliott v. Specialized Loan Servicing, LLC, No. 1:16-CV-4804-TWT-JKL, 2019 WL 1198760,

16

at *20 (N.D. Ga. Jan. 30, 2019) (citing Jones v. Cent. Builders Supply Co., 217 Ga. 190, 195-96 (1961)).  Plaintiffs must also identify the term or terms of the contract that they allege Defendants breached.  Adkins v. Cagle Foods JV, LLC, 411 F.3d 1320, 1327 (11th Cir. 2005) (affirming dismissal of breach of contract claim where plaintiff could not identify a contractual provision defendant breached); Goodwill v. BB&T Inv. Servs., Inc., No. 1:13-CV-1119-WSD, 2013 WL 6271868, at *4 (N.D. Ga. Dec. 4, 2013) (finding that plaintiff did not plausibly assert a breach of contract where the plaintiff failed to provide sufficient information about the alleged contract); Am. Casual Dining, L.P. v. Moe's Sw. Grill, L.L.C., 426 F. Supp.2d 1356, 1369 (N.D. Ga. 2006) (dismissing a breach of contract claim because plaintiff could not identify a contractual provision breached by defendant).

Defendants argue Plaintiffs' breach of contract claim must be dismissed.  [Doc. 20, at 9-10].  Defendants contend that Plaintiffs' Amended Complaint does not allege that Ocwen, Nationstar, or Caliber violated a specific contractual term.  According to Defendants, Plaintiffs allege Cenlar breached the contract by creating an escrow account and by failing to provide proper notice of revocation of escrow waiver, but that Cenlar's alleged breach (when it purchased force-placed insurance) occurred before any of the named Defendants had any contractual obligations to Plaintiffs.  [Id.]. Defendants also contend that even assuming the Amended Complaint alleged a

violation of a specific contractual term, the breach of contract claim would not be viable "because Plaintiffs do not allege their own performance under the same contracts, and their admitted non-payment for over eight years precludes them from suing in contract." [Id. at 10].

In Plaintiffs' response to Defendants' motion to dismiss, Plaintiffs argue "[t]here can be no doubt that a valid contract exists" and that "Defendants breached the contract . . . ." [Doc. 22, at 7]. But Plaintiffs do not cite to a specific contractual provision that Ocwen, Nationstar, or Caliber allegedly breached. [Doc. 22, at 7-9]. Instead, Plaintiffs argue that when non-defendant "CENLAR secured force-placed insurance," it was not "as a result of Plaintiff's failing to maintain proper coverage on the home" and that "there is no evidence before the Court that Plaintiffs failed to maintain insurance during the period of time that CENLAR serviced the loan." [Id. at 9]. Plaintiffs also assert that the Amended Complaint states that none of Defendants have ever provided notice of revocation of the escrow waiver "but each and every one of them sought to collect for escrow." [Id.]. However, the Court again notes that Plaintiffs have failed to point to a specific contractual provision that Defendants breached. The Amended Complaint alleges Cenlar secured force-placed insurance and established an escrow account, but Plaintiffs do not allege that Ocwen, Nationstar, or Caliber took these actions in breach of a contractual provision.

Even assuming *arguendo* that Plaintiffs had cited to a contractual term that was allegedly breached by Defendants, the Court finds that dismissal would be warranted. As previously noted, a plaintiff bringing a breach of contract claim under Georgia law must demonstrate his performance of the contract and that he has the right to complain about the contract being broken.  Elliott, 2019 WL 1198760, at *20; Dewrell Sacks, 324 Ga. App. at 223.  Plaintiffs acknowledge that they were "obligated to make the specified mortgage payments on a timely basis." [Doc. 22, at 7].  Plaintiffs contend that they fulfilled this obligation and that although Defendants were required to accept their mortgage payments and properly allocate the funds, Defendants refused Plaintiffs' payments.  [Id. at 7-8].  The Amended Complaint, however, does not make such allegations.

Plaintiffs have not identified any statement in the Amended Complaint that asserts that Defendants refused to accept mortgage payments.  As discussed *supra*, it appears that Plaintiffs allege that TBW returned Plaintiffs mortgage payments in July and August 2009 and that Cenlar returned a mortgage payment in November 2009. [Doc. 19 ¶¶ 18, 19, 27].  But TBW and Cenlar are not Defendants in this action and Plaintiffs do not make a factual allegation that Ocwen, Nationstar, or Caliber ever refused to accept a mortgage payment or ever informed Plaintiffs that they were not required to make the mortgage payments.  The Amended Complaint asserts that the

last mortgage payment made by Plaintiffs was in late 2009 or early 2010 when "Plaintiffs paid the October 2009 mortgage payment to Ocwen." [Doc. 19 ¶¶ 26-36]. The October 2009 payment appears to be the only mortgage payment that Plaintiffs ever tendered to Defendants Ocwen, Nationstar, or Caliber. Plaintiffs do not allege that they ever made or even tendered a mortgage payment to Defendants during the eight year period from early 2010 through 2018. In light of Plaintiffs' failure to cite to a specific contractual provision that Defendants breached and Plaintiffs' own allegations that they failed to make the required mortgage payments to Defendants, it is **RECOMMENDED** that Defendants' motion to dismiss be **GRANTED** on Plaintiffs' breach of contract claim. [Doc. 20]

### C.   Negligence Claim

In Count III of the Amended Complaint, Plaintiffs assert a state law claim for negligence against all three Defendants. [Doc. 19, Count III]. Defendants have moved to dismiss Plaintiffs' negligence claim and Plaintiffs have responded by stating that they are withdrawing this claim. [Doc. 20, at 10-12; Doc. 22, at 9]. It is, therefore, **RECOMMENDED** that Defendants' motion to dismiss be **GRANTED** on Plaintiffs' negligence claim. [Doc. 20].

### D.   <u>FDCPA Claim</u>

In Count IV of their Amended Complaint, Plaintiffs bring claims against Defendant Caliber based on the FDCPA.  [Doc. 19, Count IV].  To state a claim for relief under the FDCPA, the complaint must allege facts sufficient to show that "(1) the plaintiff has been the object of collection activity arising from consumer debt, (2) the defendant is a debt collector as defined by the FDCPA, and (3) the defendant has engaged in an act or omission prohibited by the FDCPA."  <u>Moore v. McCalla Raymer, LLC</u>, 916 F. Supp. 2d 1332, 1347 (N.D. Ga. 2013) (citation and internal quotation marks omitted).  Defendant Caliber argues Plaintiffs' Amended Complaint fails to state a claim under the FDCPA because it does not allege facts sufficient to show that Caliber is a "debt collector" as defined by the Act.  [Doc. 20, at 12-13].  Defendant Caliber also argues that the FDCPA is inapplicable to foreclosure activity.  [<u>Id.</u>].

Under the FDCPA, a "debt collector" is defined as "any person [1] who uses any instrumentality of interstate commerce or the mails in any business the *principal purpose* of which is the collection of any debts, or [2] who *regularly collects* or attempts to collect, directly or indirectly, *debts owed or due* or asserted to be owed or due *another*."  15 U.S.C. § 1692a(6) (emphasis added).  Thus, under the first definition of a "debt collector," a plaintiff must show that the "principal purpose" of the defendant's business is debt collection.  <u>Davidson v. Capital One Bank (USA), N.A.</u>,

797 F.3d 1309, 1317 (11th Cir. 2015).   Although Plaintiffs' Amended Complaint describes the FDCPA's definition of "debt collector," Plaintiffs make no factual allegation that debt collection is the principal purpose of Defendant Caliber's business.[3] [Doc. 19].   Under the second definition of a "debt collector," a plaintiff must show that the defendant regularly collects or attempts to collect debts owed or asserted to be owed to another.  15 U.S.C. § 1692a(6).   Plaintiffs' Amended Complaint, however, does not allege that Defendant Caliber satisfies the second definition of "debt collector."  [Doc. 19 ¶¶ 72, 124-42].   Furthermore, in their response to Defendants' motion to dismiss, Plaintiffs do not dispute Defendant Caliber's argument that it is not a debt collector under the FDCPA.  [Doc. 22].

Rather than alleging facts showing that Defendant Caliber is a "debt collector" under the FDCPA, Plaintiffs have merely described the Act's definition of "debt collector."  [Doc. 19 ¶ 128].  This assertion is insufficient to state a claim for relief.  As noted *supra*, "a formulaic recitation of the elements of a cause of action will not do[.]"

---

[3] A mortgage statement sent by Caliber to Plaintiffs in February 2018 identifies Caliber as a "debt collector."  [Doc. 19 ¶ 137, Ex. 15].  This fact, however, does not support Plaintiffs' FDCPA claim.  "The relevant test is whether an entity is a debt collector under the statutory definition of the FDCPA, 'not whether the entity has ever stated in a document that it is a debt collector.'"  Faulconer v. Mortgage Elec. Registration Sys., Inc., No. 5:12-CV-246 MTT, 2014 WL 583006, at *8 (M.D. Ga. Feb. 13, 2014) (quoting Prickett v. BAC Home Loans, 946 F. Supp. 2d 1236, 1249 (N.D. Ala. 2013)).

Twombly, 127 S. Ct. at 1965.  Plaintiffs' implicit assertions are not factual allegations and fail to show that Defendant Caliber is a "debt collector" within the meaning of the FDCPA.  [Doc. 19 ¶¶ 124-42].

The FDCPA also includes what the Supreme Court in Obduskey v. McCarthy & Holthus LLP, 139 S. Ct. 1029, 1036 (2019), described as the "limited-purpose definition" of "debt collector."  This provision states: "For the purpose of section 1692f(6) of this title, [the] term [debt collector] also includes any person . . . in any business the principal purpose of which is the enforcement of security interests."  15 U.S.C. § 1692a(6).  Under the subsection to which the limited-purpose definition refers, § 1692f(6), a "debt collector" is prohibited from: "Taking or threatening to take any nonjudicial action to effect dispossession or disablement of property if—(A) there is no present right to possession of the property claimed as collateral through an enforceable security interest[.]"  15 U.S.C. § 1692f(6).  Here, Plaintiffs do not contend that their Amended Complaint as currently pled states a claim under this section of the FDCPA.  [Doc. 22, at 10-12].  Instead, Plaintiffs seek leave to file a Second Amended Complaint to amend their allegations and assert that Defendant Caliber is a debt collector under § 1692f(6) and that Caliber violated § 1692f(6)(A) by threatening nonjudicial foreclosure on Plaintiffs' property without a present right to possess.  [Doc. 22, at 11-12; Doc. 23-1, at 4].  Plaintiffs contend that the Supreme Court's decision in

Obduskey, 139 S. Ct. 1029, "makes clear that foreclosure activity is in fact a form of debt collection, but is only subject to a limited portion of the FDCPA, that being § 1692f(6)." [Doc. 23-1, at 3]. The problem with Plaintiffs' argument seeking to amend their Complaint based on Obduskey is that there is no indication that the controlling law in this Circuit regarding § 1692f(6) has changed. Sciortino Bankr. Estate v. Shapiro Pendergast & Hasty, LLP, No. 1:18-CV-1340-AT-JFK, 2019 WL 7496253, at *8 (N.D. Ga. Nov. 27, 2019), report and recommendation adopted sub nom. Sciortino Bankr. Estate v. Shapiro Pentergast & Hasty, LLP, No. 1:18-CV-1340-AT, 2019 WL 7493533 (N.D. Ga. Dec. 17, 2019).

"Under § 1692f(6), a debt collector may not take or threaten to take a consumer's property in a nonjudicial action if (a) there is no present right to the property through an enforceable security interest . . . ." Warren v. Countrywide Home Loans, Inc., 342 F. App'x 458, 460 (11th Cir. 2009) (holding that the FDCPA only applies to a non-judicial foreclosure sale "for the purposes of § 1692f(6)") (citation omitted). Plaintiffs' Amended Complaint asserts a claim based on § 1692f(6) and quotes the statutory language but does not make any factual allegations that Defendant Caliber violated this section of the FDCPA. [Doc. 19]. In the Proposed Second Amended Complaint, Plaintiffs assert that Caliber "[took] or threaten[ed] to take any nonjudicial action to effect dispossession or disablement of property if—there [was] no present right to

possession of the property claimed as collateral through an enforceable security interest." [Doc. 23-2 ¶ 135 (quoting 15 U.S.C. § 1692f(6)(A)]. Unfortunately, the conclusory allegations in the Proposed Second Amended Complaint, however, merely track the language from the FDCPA and fail to state a plausible claim under § 1692f(6). Adams v. Bank of America, N.A., No. 1:06CV00228, 2007 WL 2746871, at *3 (M.D. N.C. Sept. 19, 2007) (finding that the plaintiff's "numerous (and often repetitive) allegations under FDCPA" and other provisions "are nothing more than bare conclusory statements that track the language of statutory provisions" and holding "that the Complaint fails to state any cognizable claim and should be dismissed").

Moreover, even if Plaintiffs' Amended Complaint or Proposed Second Amended Complaint had asserted factual allegations, rather than conclusory assertions, in support of their FDCPA claim under § 1692f(6), the Court would still find the claim could not survive Defendants' motion to dismiss. Plaintiffs' own complaint asserts that they executed a security deed that was last assigned to U.S. Bank Trust in June 2016 and that Defendant Caliber has been the servicer since that time. [Doc. 19 ¶¶ 13, 71, 72, 134]. Although Plaintiffs allege Caliber has threatened foreclosure, Plaintiffs do not allege that the assignment of the security deed was not a matter of public record; neither do Plaintiffs make any factual allegations that Caliber had no present right to the property through an enforceable security interest. [Doc. 19 ¶ 79]. As this Court

has held, "Where there is an enforceable security interest shown by public records, dismissal of a § 1692f(6) claim is appropriate." <u>Moore</u>, 916 F. Supp. 2d at 1347 (citation and internal quotation marks omitted).   In light of these facts, it is **RECOMMENDED** that Defendants' motion to dismiss Plaintiffs' FDCPA claim [Doc. 19, Count IV] be **GRANTED**.  [Doc. 20]

###### E.   <u>Attorney's Fees and Costs</u>

In Count V of the Amended Complaint, Plaintiffs seek attorney's fees and costs pursuant to O.C.G.A. § 13-6-11.  [Doc. 19, Count V].  Plaintiffs' claims for attorney's fees are derivative of their substantive causes of action.  <u>Gilmour v. Am. Nat'l Red Cross</u>, 385 F.3d 1318, 1324 (11th Cir. 2004) (explaining that a claim for attorney's fees pursuant to O.C.G.A. § 13-6-11 requires a valid underlying claim); <u>J. Andrew Lunsford Props., LLC v. Davis</u>, 257 Ga. App. 720, 722 (2002).  Because this Court has already recommended dismissal of each of Plaintiffs' substantive causes of action, it is **RECOMMENDED** that Defendants' motion to dismiss Plaintiffs' claim [Doc. 19, Count V] for attorney's fees and costs be **GRANTED**.  [Doc. 20].

## IV.   <u>PLAINTIFFS' MOTION TO AMEND</u>

Also pending before the Court is Plaintiffs' Motion [Doc. 23] for Leave to File a Second Amended Complaint.  The court's leave to amend shall be freely given "when justice so requires." <u>Foman v. Davis</u>, 371 U.S. 178, 182 (1962); Fed. R. Civ. P. 15.

Valid reasons for denying a motion to amend, however, include "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of the amendment." Foman, 371 U.S. at 182; Equity Lifestyle Props. v. Fla. Mowing and Landscape Serv., 556 F.3d 1232, 1241 (11th Cir. 2009). "An amendment adding a cause of action is considered futile if the new cause of action does not state a claim upon which relief can be granted" or "if the complaint, as amended, would be subject to dismissal." See Spanish Broad. Sys. of Fla., Inc. v. Clear Channel Commnc'ns, Inc., 376 F.3d 1065, 1077 (11th Cir. 2004); Galindo v. ARI Mut. Ins. Co., 203 F.3d 771, 777 n.10 (11th Cir. 2000); Rudolph v. Arthur Andersen & Co., 800 F.2d 1040, 1042 (11th Cir. 1986). Thus, "[i]n deciding whether the amendment to the complaint would be futile, the court should be guided by the principles that govern consideration of a motion to dismiss." See Wyatt v. BellSouth, Inc., 176 F.R.D. 627, 630 (M.D. Ala. 1998); see also Glick v. Koenig, 766 F.2d 265, 268 (7th Cir. 1985); Holloway v. Dobbs, 715 F.2d 390, 392-93 (8th Cir. 1983).

In the present case, Plaintiffs seek to file their Proposed Second Amended Complaint in order to clarify their FDCPA claim under § 1692f(6). [Doc. 23-1, at 4; Doc. 23-2, Count III]. The Court finds, however, that the proposed FDCPA claim

would not survive a motion to dismiss. The Proposed Second Amended Complaint asserts that Defendant Caliber violated § 1692f(6)(A) of the FDCPA by threatening nonjudicial foreclosure on Plaintiffs' property without a present right to possess. [Doc. 23-1, at 4; Doc. 23-2 ¶¶ 134-35]. But as noted *supra*, the Proposed Second Amended Complaint not only offers nothing more than a quote of the FDCPA language in § 1692f(6), but Plaintiffs' own Proposed Complaint asserts that they executed a security deed that was last assigned to U.S. Bank Trust in June 2016 and that Defendant Caliber has been the servicer since this time. [Doc. 23-2 ¶¶ 13, 72, 73, 135]. The Proposed Complaint neither alleges that the assignment of the security deed was not a matter of public record nor makes any factual allegations that Defendant Caliber had no right to the property through an enforceable security interest. [Doc. 23-2]. Because Plaintiffs' Proposed Complaint which seeks to clarify their FDCPA claim under § 1692f(6) would not survive a motion to dismiss, Plaintiffs' Motion for Leave to File a Second Amended Complaint is **DENIED** [Doc. 23] on the basis of futility. Florida Evergreen Foliage v. E.I. Dupont De Nemours and Co., 336 F. Supp. 2d 1239, 1257 (S.D. Fla. 2004) (a denial of a motion to amend for futility is based on a decision that "the proposed claims are futile because they would not survive a motion to dismiss").

## V.   <u>CONCLUSION</u>

Based on the foregoing reasons, the Court **RECOMMENDS** that Defendants'
Motion to Dismiss be **GRANTED** [Doc. 20] and that Plaintiffs' Amended Complaint
[Doc. 19] be **DISMISSED**.  Accordingly, Plaintiffs' Motion for Leave to File a Second
Amended Complaint is **DENIED**.   [Doc. 23].   As this is a final Report and
Recommendation and there are no other matters pending before this Court, the Clerk
is directed to terminate the reference to the undersigned.

**SO ORDERED AND REPORTED AND RECOMMENDED**, this  12   day
of February, 2020.

LINDA T. WALKER
UNITED STATES MAGISTRATE JUDGE